UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

NOT FOR PUBLICATION

MIROSLAW HAPANOWICZ, et al,

                Plaintiffs,

– against –

ALEXANDRIA TILE COMPANY, INC., et al,

                Defendants.

**MEMORANDUM & ORDER**

11-cv-0127 (ERK) (JO)

KORMAN, J.:

After multiple individuals consented to become party plaintiffs as part of a collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(a), Miroslaw Hapanowicz and twelve other named plaintiffs filed a Second Amended Complaint, on behalf of themselves and all others similarly situated, on October 31, 2011 against Alexandria Tile Company, Inc. ("Alexandria"), Aly A. Elyased, Nasser Mohammed, Tully Construction Co. Inc. ("Tully"), Judlau Contracting, Inc. ("Judlau"), Mega Contracting, Inc., and Arena Construction Co., Inc.[1] The plaintiffs alleged seven causes of action: (1) breach of contract against Alexandria; (2) nonpayment of minimum, overtime, and other wages under the New York Labor Law ("NYLL") against Alexandria; (3) quantum meruit against Alexandria; (4) failure to pay minimum and/or overtime wages under the Fair Labor Standards Act ("FLSA") against Alexandria; (5) breach of contract by all Defendants for failure to pay prevailing wages to plaintiffs as third party beneficiaries to public works contracts; (6) retaliation under the NYLL against Alexandria; and (7) retaliation under the FLSA against Alexandria.

---

[1] The parties entered stipulations of dismissal with defendants Mega Contracting, Inc. and Arena Construction Co., Inc. *See* ECF Nos. 68, 70, 96.

On October 7, 2013, the eight remaining[2] named plaintiffs moved for summary judgment "as to liability of all Defendants for claims for unpaid prevailing wages and benefits and unpaid overtime pursuant to the Fair Labor Standards Act, New York Labor Law, and regulations thereunder, as well as the common law of New York[.]" Not. of Mot. at 2, ECF No. 98. They assert that Alexandria did not pay them the proper prevailing and overtime wages. Pls.' Mem. at 11-12, ECF No. 110. While the plaintiffs fail to specify which causes of action their motion addresses, I assume they seek summary judgment with respect to all of their claims except the sixth and seventh causes of action.

After being ordered to do so, all defendants submitted statements of undisputed material facts, as required by Local Rule 56.1(b). While defendants Alexandria and Tully failed to comply with the language of that rule, which requires that the papers opposing a motion for summary judgment "include a correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party," I have considered all of their factual assertions. Local Rule 56.1(b). Where the defendants have failed to controvert the plaintiffs' undisputed facts, however, the plaintiffs' Rule 56.1 Statement is deemed admitted. Local Rule 56.1(c). I also note that Judlau is the only defendant to submit a memorandum of law in opposition to the plaintiffs' motion.

## FACTS

The eight remaining plaintiffs—Miroslaw Hapanowicz, Ruslan Shyika, Igor Zhdan, Festus Adewale Dare, Tyrie Jenkins, Reginald Titus, Abraham Castillo, and Herald Wilfred—are residents of New York and New Jersey. Second Amended Compl. ¶¶ 6-12, ECF No. 44. Defendant Alexandria is a corporation organized under New York law. Second Amended

---

[2] One of the plaintiffs who was a party to the Second Amended Complaint executed a stipulation of voluntary dismissal, *see* ECF No. 69, and the claims of four other plaintiffs who were named in that complaint were dismissed for failure to prosecute pursuant to Fed. R. Civ. P. 41(b), *see* ECF No. 71.

Compl. ¶ 13; Alexandria R. 56.1 Stmt. ¶ 1, ECF No. 130.  Defendant Elyased wholly owns and is the sole officer and principal of Alexandria.  Alexandria R. 56.1 Stmt. ¶ 1; Elyased Decl. ¶ 1, ECF No. 108.  Elyased claims that Defendant Nasser was an Alexandria project supervisor, and not an owner, officer, or director of the company.  Alexandria R. 56.1 Stmt. ¶ 1; Elyased Decl. ¶ 4.  Defendants Judlau and Tully are corporations organized under New York law.  Second Amended Compl. ¶¶ 22-23; Tully R. 56.1 Stmt. ¶ 1, ECF No. 128.

The plaintiffs were Alexandria employees at various times from 2005 to 2010.  During that time, Alexandria contracted to perform construction work for various general contractors, including Judlau and Tully, on various "public works projects."  Alexandria R. 56.1 Stmt. ¶ 3; Judlau R. 56.1 Stmt. ¶ 3, ECF No. 129; Tully R. 56.1 Stmt. ¶ 3.  The projects included construction work on the Brooklyn Battery Tunnel, Charleston Bus Annex, Department of Sanitation ("DOS") garages, 59th St.-Columbus Circle subway station, and Myrtle-Wyckoff subway station.  Tully was the general contractor at the Brooklyn Battery Tunnel, DOS garages, and Charleston Bus Annex, and Judlau was the general contractor at the 59th St.-Columbus Circle and Myrtle-Wyckoff subway stations.  Pls.' R. 56.1 Stmt ¶¶ 1-2, ECF No. 99; Judlau R. 56.1 Stmt. ¶ 2; Tully R. 56.1 Stmt. ¶ 3.  Plaintiffs worked in various capacities, including as tile setters, plasterers, mason tenders, and bricklayers.

Seven of the eight remaining plaintiffs have submitted declarations to support their allegations that Alexandria failed to properly compensate them during their employment.  They claim that they regularly worked more than 40 hours per week, were not paid appropriate prevailing wages, and were not paid for all the hours they worked, including overtime wages.  In addition, the plaintiffs have submitted an extensive expert report that calculates each plaintiff's alleged unpaid wage damages based on the number of hours worked and wages paid, as reported by the plaintiffs, and the applicable prevailing and overtime rates.  Pls.' Vol II Ex. 2, ECF No.

101-2.  That expert report asserts that Alexandria's payroll reports are inaccurate because they are inconsistent with other records, including Alexandria's General Ledger, general contractor timesheets, and the plaintiffs' notes and recollections regarding their hours and wages.  Pls.' R. 56.1 Stmt. ¶ 11; Pls.' Vol II Ex. 2.

### 1. Miroslaw Hapanowicz

Miroslaw Hapanowicz asserts that he worked for Alexandria as a tile setter and plasterer from 2005 until 2009.  Pls.' Vol. III Hapanowicz Decl. ¶ 3, ECF No. 102.  Alexandria payroll reports reflect that he also worked as a tile finisher, Pls.' Reply Ardito Decl. Ex. 2, ECF No. 118-2, and that he worked for Alexandria in 2010.  96 St. Reports, ECF No. 132-8.  Hapanowicz claims that he worked at the 59th St.-Columbus Circle and Myrtle-Wyckoff subway stations, the Brooklyn Battery Tunnel, and a project at P.S. 70.  Pls.' Vol. III Hapanowicz Decl. ¶ 8.  The Alexandria payroll reports indicate that he also worked at the DOS garages, and projects at the 96th street and 135th subway street stations.  Pls.' Reply Ardito Decl. Exs. 2, 4.

Hapanowicz asserts that he normally worked from 7:00 a.m. to 3:00 p.m. on weekdays, and frequently worked for twelve hours per day on Saturdays and Sundays.  Pls.' Vol. III Hapanowicz Decl. ¶ 13.  On the Brooklyn Battery Tunnel project, Hapanowicz explains that he worked Sunday through Monday from 8:00 p.m. to 4:00 a.m.  Pls.' Vol. III Hapanowicz Decl. ¶ 13.  He claims that Alexandria initially paid him $18.00 per hour, and later increased that rate to $28.00 per hour.  Pls.' Vol. III Hapanowicz Decl. ¶ 14.  According to Alexandria payroll reports, from April 2005 until September 2010, depending on his job, Hapanowicz was paid between $33.00 and $43.00 per hour in base pay, and between $16.00 and $26.00 per hour in supplemental benefits.  *See, e.g.*, Pls.' Vol. II Exs. 2D, 2P, ECF Nos. 101-6, 101-18; Pls.' Reply Ardito Decl. Exs. 2-4.  In addition, Alexandria has submitted $35,500 worth of cash receipts, which it claims to have paid to Hapanowicz as additional benefits that were not included in the

plaintiffs' expert report. Galina Decl. ¶ 23, ECF No. 107; Elyased Decl. ¶ 16; Alexandria Opp'n Ex. A, ECF No. 108-1. The plaintiffs assert that the payroll reports inaccurately reflect the hours worked by and wages paid to Hapanowicz, Pls.' R. 56.1 Stmt. ¶ 11, and Hapanowicz claims that he never received that cash and never signed the receipts. Pls.' Reply Hapanowicz Decl. ¶¶ 2-11.

2. *Ruslan Shyika*

Ruslan Shyika claims he was employed by Alexandria as a tile setter and plasterer from approximately February 2005 through December 2005. Pls.' Vol. III Shyika Decl. ¶ 3, ECF No. 105. Alexandria payroll reports reflect that he also worked as a tile finisher. Pls.' Reply Ardito Decl. Ex. 2. He worked at the Brooklyn Battery Tunnel and Myrtle-Wyckoff subway station, and a project at Queens Plaza. Pls.' Vol. III Shyika Decl. ¶ 7. Shyika asserts that Alexandria was supposed to pay him between $15.00 and $17.00 per hour, but he sometimes received less than that amount. Pls.' Vol. III Shyika Decl. ¶ 11. According to Alexandria payroll reports from April 2005 until December 2005, for work at the Brooklyn Battery Tunnel as a plasterer, plasterer's helper, and tile finisher, Shyika was paid $33.52 per hour in base pay, and received between $16.00 and $19.00 per hour in supplemental benefits. Pls.' Vol. I Exs. 2-3, ECF Nos. 100-2, 100-3; Pls.' Vol. II Ex. 2P; Pls.' Reply Ardito Decl. Ex. 2. In contrast, the plaintiffs have submitted checks issued by Elyased on behalf of Alexandria to Shyika for amounts less than the wages shown on the payroll reports, and which the plaintiffs claim represent the total amount paid to Shyika for the same pay periods. Pls.' Reply Ardito Decl. Ex. 2. In addition, the copies of the checks contain handwritten notes, which list the hours Shyika allegedly worked those weeks. Pls.' Reply Ardito Decl. Ex. 2. Those hour totals are greater than the totals listed on the payroll reports for the corresponding weeks, and often exceed 40 hours per week. Pls.' Reply

Ardito Decl. Ex. 2. Elyased claims that Shyika was paid benefits in cash, but Elyased cannot locate the receipts. Elyased Decl. ¶ 47.

### 3. Igor Zhdan

Igor Zhdan worked for Alexandria as a tile setter and plasterer from January 2005 to August 2005. Pls.' Vol. III Zhdan Decl. ¶ 3, ECF No. 106. He asserts that he worked at the Brooklyn Battery Tunnel and Myrtle-Wyckoff subway station, Pls.' Vol. III Zhdan Decl. ¶ 3, but Alexandria claims he worked at only the Brooklyn Battery Tunnel. Elyased Decl ¶¶ 49-50. Zhdan claims that he was paid between $14.00 and $16.00 per hour. Pls.' Vol. III Zhdan Decl. ¶¶ 7, 12. According to Alexandria's payroll reports from April 2005 to August 2005, Zhdan was paid between $33.52 and $38.85 per hour in base pay, and between $18.05 and $19.50 in supplemental benefits per hour, for work as a plasterer on the Brooklyn Battery Tunnel. Pls.' Vol I Ex. 3; Pls.' Vol. II Ex. 2D; Pls.' Reply Ardito Ex. 2. The plaintiffs have submitted checks issued by Alexandria to Zhdan for amounts less than the wages shown on the payroll reports during the same periods. Pls.' Reply Ardito Decl. Ex. 2. Elyased claims that Zhdan was paid benefits in cash, but Elyased cannot locate the receipts. Elyased Decl. ¶ 51.

### 4. Festus Adewale Dare

Fetsus Dare claims that he worked for Alexandria as a mason tender and foreman in 2009, from approximately March to September. Pls.' Vol. III Dare Decl. ¶ 3, ECF No. 103. Alexandria asserts that Dare was employed from April 11, 2009 to June 5, 2009. Elyased Decl. ¶¶ 18-19. He worked at only the Charleston Bus Annex. Pls.' Vol. III Dare Decl. ¶ 3. The plaintiffs have submitted paystubs from May 5, 2009 and May 23, 2009 that show lower total wages than the payroll reports for the corresponding weeks. Pls.' Reply Ardito Decl. Ex. 2. Alexandria payroll reports for the weeks ending April 19, 2009, April 26, 2009, May 8, 2009, and May 23, 2009, show that Dare was paid $32.47 per hour in base pay, and $21.02 per hour in

supplemental benefits, for work as a grout finisher.  Pls.' Vol. II Ex. 2K, ECF No. 101-13; Pls.'

Reply Ardito Decl. Ex. 2.  Dare asserts that he was paid $200 in cash for working on the

weekend regardless of how many hours he worked.  Pls.' Vol. III Dare Decl. ¶ 12.  Elyased

claims that Dare was referred to Alexandria by the Mason Tenders Local 79 union, and that his

benefits were payable to the union.  Elyased Decl. ¶ 20.  Alexandria has submitted a Fringe

Benefit Deficiency Report from a lawsuit, which was settled, initiated by the Mason Tenders

against Alexandria for failure to pay fringe benefits.  Elyased Decl. ¶¶ 21-22; Alexandria Opp'n

Ex. B.  Dare's name appears on the report as a Mason Tenders member and Alexandria

employee for whom benefits were not paid.  Alexandria Opp'n Ex. B, ECF No. 108-2.  Dare

claims he was never a union member, and that he never received the benefits payments shown on

his paychecks.  Pls.' Vol. III Dare Decl. ¶¶ 15-16.

  *5.  Tyrie Jenkins*

Tyrie Jenkins was employed by Alexandria as a bricklayer at the Charleston Bus Annex.

Pls.' Vol. III Jenkins Decl. ¶¶ 2-3, ECF No. 104.  Jenkins claims that while he was employed by

Alexandria he was a member of the Local 4 union in Indianapolis.  Pls.' Vol. III Jenkins Decl. ¶

4.  On the other hand, Alexandria contends that he was a member of the Local 1 union and that

his benefits were payable to the Local 1.  Elyased Decl. ¶ 37.  While Jenkins claims that he

worked at the Charleston Bus Annex from April until December in 2009, Pls.' Vol. III Jenkins

Decl. ¶ 2, Elyased asserts that Jenkins was employed from only May until July 2 that year.

Elyased Decl. ¶¶ 34-35.  Alexandria payroll reports are generally consistent with Jenkins claim

that he was paid a base rate of $46.68 per hour.  Pls.' Vol. III Jenkins Decl. ¶ 4; Pls.' Reply

Ardito Ex. 2, Jenkins Ex. 3.  They also show that, from May 10, 2009 to June 28, 2009, he

received $26.65 per hour in supplemental benefits.  Pls.' Reply Ardito Ex. 2, Jenkins Ex. 3.  One

report, for the week ending July 5, 2009, indicates that Jenkins was paid a base rate of $48.50 per

hour and $27.00 in supplemental benefits. Jenkins Charleston Annex Reports, ECF No. 132-15. Jenkins asserts that he typically worked 48 hours per week, Pls.' Vol. III Jenkins Decl. ¶ 6. In addition, the plaintiffs have submitted Jenkins' paystubs for weeks that correspond with the Alexandria payroll reports that have been submitted, and the paystubs show lower earnings totals than the Alexandria payroll reports. Pls.' Reply Ardito Ex. 2. Jenkins asserts that he was usually paid about $300 in cash for working on the weekend, and that these wages and hours were not used to calculate the numbers of hours he worked or his benefit payments. Pls.' Vol. III Jenkins Decl. ¶ 7.

### 6. Reginald Titus

Reginald Titus worked for Alexandria at the Charleston Bus Annex from May until December 2009. Pls.' Vol. III Titus Decl. ¶ 3, ECF No. 109; Elyased Decl. ¶ 30. Titus was a member of the Mason Tenders Local 79 union. Pls.' Vol. III Titus Decl. ¶ 9; Elyased Decl. ¶ 31. According to Alexandria payroll reports, Titus was paid $33.00 per hour in base pay, and $21.70 per hour in supplemental benefits for work as a mason tender. Pls.' Vol. II Ex. 2L, ECF No. 101-14. Titus acknowledges that he was paid a $33.00 per hour base rate, but claims that he did not receive all of his hourly supplemental benefit payments Pls.' Vol. III Titus Decl. ¶ 10. Alexandria asserts that it paid his benefits to the Local 79 union, and Titus's name appears on the same deficiency report referenced above with respect to plaintiff Dare. Elyased Decl. ¶¶ 31-33, Ex. B.

### 7. Abraham Castillo

Abraham Castillo claims that he was employed by Alexandria from approximately November 2009 until the end of February 2010. Pls.' Reply Castillo Decl. ¶ 2, ECF No. 114. Elyased asserts that Alexandria employed Castillo as a mason tender from October 2009 to December 2009. Elyased Decl. ¶ 25. While Castillo alleges that he regularly worked between

40 and 48 hours per week, Pls.' Reply Castillo Decl. ¶ 2, Alexandria states that he worked only 14 to 35 hours per week, and a total of 317 hours while he was employed by Alexandria. Elyased Decl. ¶ 25. Castillo further claims that he was not paid the proper wage rates. Pls.' Reply Castillo Decl. ¶ 2. According to Alexandria payroll reports from November 8, 2009 to December 20, 2009, Castillo was paid a base rate of $33.00 per hour, and $21.70 per hour in supplemental benefits. Castillo Charleston Annex Reports. Elyased asserts that Castillo's benefits were paid to the Mason Tenders Local 79 union, but again, no evidence has been submitted to confirm or rebut that fact. Elyased Decl. ¶ 27.

   8. *Herald Wilfred*

The plaintiffs' expert reports that Herald Wilfred worked for Alexandria from August 2009 through November 2009. Pls.' Vol. II Ex. 2. Elyased asserts that Wilfred was employed as a bricklayer from August 9, 2009 to August 29, 2009. Elyased Decl. ¶ 38. Three Alexandria payroll reports from 2009, for the weeks ending August 16, August 23, and August 30, indicate that Wilfred was paid $48.50 per hour in base pay, and $27.00 in supplemental benefits per hour for work as a bricklayer at the Charleston Bus Annex. Pls.' Vol. II Ex. 2O. The payroll reports designate some of the time Wilfred worked each of those three weeks as overtime. Pls.' Vol. II Ex. 2O, ECF No. 101-17. Plaintiffs assert that the wages reported on the payroll reports are inaccurate because they list a greater amount as Wilfred's net pay than Alexandria's General Ledger. Pls.' Vol. II Exs. 2 at 20, 2O. It is undisputed that Wilfred was a member of the Local 1 union, Pls.' Vol. II Ex. 2 at 20; Elyased Decl. ¶ 38, and Alexandria submits that his benefits were paid to the union. Elyased Decl. ¶ 39.

## STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In determining whether there is a genuine issue of material fact, the court must resolve all ambiguities, and draw all inferences, against the moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). Nevertheless, the non-moving party may defeat summary judgment only by producing evidence of specific facts that raise a genuine issue for trial. *Anderson*, 477 U.S. at 256. "Conclusory allegations will not suffice to create a genuine issue," and "[t]here must be more than a 'scintilla of evidence'" to defeat a summary judgment motion. *Del. & Hudson Ry. Co. v. Consol. Rail Corp.*, 902 F.2d 174, 178 (2d Cir. 1990) (quoting *Anderson*, 477 U.S. at 252); *Gayle v. Harry's Nurses Registry, Inc.*, No. 07-CV-4672 (NGG) (MDG), 2012 WL 4174401, at *3 (E.D.N.Y. Sept. 18, 2012) ("The nonmoving party may not rest on mere allegations or denials of the adverse party's pleadings as a means of establishing a genuine issue worthy of trial, but must demonstrate by affidavit or other admissible evidence that there are genuine issues of material fact or law.").

## DISCUSSION

The defendants do not dispute that the plaintiffs were entitled to prevailing wages as employees on public works projects, or that plaintiffs were entitled to overtime wages if they worked overtime hours. Instead, with respect to all of the plaintiffs' claims for unpaid wages, the defendants argue that for all hours which plaintiffs worked they were paid proper wages. The defendants submit that Alexandria's payroll records accurately show how many hours the plaintiffs worked and the wages they were paid, Alexandria R. 56.1 Stmt. ¶ 5; Judlau R. 56.1 Stmt ¶ 11; Tully R. 56.1 Stmt ¶ 5, and that certain plaintiffs were paid additional income in cash.

I briefly note that, with respect to defendant Nasser Mohammed, the plaintiffs' motion is denied on all claims because a genuine factual issue exists regarding Mohammed's role with Alexandria. The plaintiffs allege in their motion that both individual defendants are "owners and officers" of Alexandria, and that they had "operational control" and "controlled Plaintiffs' work and pay." Pls.' Mem. at 22. On the other hand, defendant Elyased asserts that Mohammed is "merely a supervisor," has no "ownership interest or managerial powers with the company," and should not be named as a defendant in the action. Elyased Decl. ¶ 4. Based on these factual disputes, it is unclear whether Mohammed is an "employer" who may be held liable under the FLSA or NYLL. *See Herman v. RSR Sec. Services Ltd*, 172 F.3d 132, 139 (2d Cir. 1999) (listing factors to consider to determine whether individual is an employer); *Chu Chung v. New Silver Palace Rests., Inc.*, 272 F. Supp. 2d 314, 318 n.6 (S.D.N.Y. 2003) ("Most courts agree that the test for determining whether an entity or person is an 'employer' under New York Labor Law is the same as the test . . . under the Fair Labor Standards Act."); *see also* 29 U.S.C. § 203(d); N.Y. Lab. Law § 190.

### I. Third Party Beneficiary Claim for Prevailing Wages Under NYLL § 220

NYLL § 220 requires a contractor who undertakes a public work project to pay its employees prevailing wages and pay or provide prevailing supplemental benefits. N.Y. Lab. Law § 220(3); *Chesterfield Assocs. v. New York State Dep't of Labor*, 830 N.E.2d 287, 288-89 (N.Y. 2005). It is undisputed that the plaintiffs were entitled to prevailing wages and supplemental benefits. Nevertheless, defendant Judlau contends that the plaintiffs' prevailing wage claim must fail because the plaintiffs have not exhausted their administrative remedies. The plaintiffs were not required to resort to administrative remedies, however, because the § 220 administrative process is not the exclusive means for an employee denied prevailing wages to obtain relief. *Ramos v. SimplexGrinnell LP*, 796 F. Supp. 2d 346, 352 (E.D.N.Y. 2011) (citing

*Fata v. S.A. Healy Co.*, 289 46 N.E.2d 339, 340-42 (N.Y. 1943)). A plaintiff may also commence "a common law breach of contract claim as the intended third-party beneficiary of a public works contract." *Id.* Moreover, a prime contractor may be held liable for its subcontractor's non-payment of prevailing wages. N.Y. Lab. Law § 223 ("Where evidence indicates non-compliance or evasion on the part of a subcontractor, the prime contractor is responsible for such non-compliance or evasion."); *see Konski Eng'rs P.C. v. Comm'r of Labor*, 645 N.Y.S.2d 239, 239-40 (N.Y. App. Div. 1996). Accordingly, the plaintiffs can pursue their prevailing wages and supplemental benefits actions against the general contractors, as well as Alexandria and Elyased.

"The Comptroller of the City of New York, the City's chief fiscal officer, determines the prevailing rate schedules." [3] *Chesterfield Assocs.*, 830 N.E.2d at 288 n.2 (citing N.Y. Lab. Law § 220(3), (5)(e)). "Whether a contractor pays a prevailing wage is easy enough to figure out, as wages are received by employees as hourly cash payments or are easily converted into the equivalent." *Id.* at 289. Determining whether a contractor has provided prevailing supplements, however, is less straightforward because supplements may be provided in any form or combination, including cash, benefits, or a combination of both. [4] *Id.* at 288-89.

An employer must maintain records of employee payment and working conditions. 29 U.S.C. § 211(c); N.Y. Comp. Codes. R. & Regs. tit. 12 § 142-2.6; *Doo Nam Yang v. ACBL Corp.*, 427 F. Supp. 2d 327, 331 (S.D.N.Y. 2005). Moreover, under both the NYLL and the FLSA, once the plaintiffs satisfies their burden to demonstrate underpayment[5]—which they have

---

[3] Archived Prevailing Wage schedules are publically available at https://comptroller.nyc.gov/general-information/prevailing-wage.

[4] NYLL § 220(5)(b) provides that "supplements" "means all remuneration for employment paid in any medium other than cash, or reimbursement for expenses, or any payments which are not 'wages' within the meaning of the law, including, but not limited to, health, welfare, non-occupational disability, retirement, vacation benefits, holiday pay life insurance, and apprenticeship training." N.Y. Lab. Law § 220(5)(b).

[5] To establish liability for unpaid wages under the FLSA or NYLL, the plaintiff has the burden to demonstrate that he performed work for which he was not properly compensated. *Kuebel v. Black & Decker Inc.*,

done here, most extensively in an expert report detailing the alleged number of hours worked, wages paid, and amount of underpayment for the alleged duration of each plaintiff's employment—"[t]he burden then shifts to the employer to present evidence either of the precise wages paid or evidence to negate the reasonableness of the inference to be drawn from the employee's evidence." *Doo Nam Yang v. ACBL Corp.*, 427 F. Supp 2d 327, 332 (S.D.N.Y. 2005).

Nevertheless, on this motion for summary judgment, all inferences must be drawn against the plaintiffs as the moving party. The plaintiffs dispute the accuracy of Alexandria's payroll reports because they conflict with Alexandria's General Ledger, as well as employee paystubs, paychecks, and general contractor timesheets. Throughout their submissions, however, the defendants insist that Alexandria's payroll records "accurately set forth certain information including the name of the project, the trade description and hours worked by Plaintiffs as well as the wages and supplements paid and deductions for each employee." Alexandria R. 56.1 Stmt. ¶ 5; *see also* Tully R. 56.1 Stmt. ¶ 5; Elyased Decl. ¶ 53; Galina Decl. ¶ 8 ("Defendants have always maintained that it relies on these records and will establish at trial that Plaintiffs were paid the correct prevailing wages."). While plaintiffs challenge the accuracy of the payroll reports, for the purposes of the plaintiffs' summary judgment motion, I accept them as accurate.

With respect to plaintiffs Dare, Jenkins, Titus, Castillo and Wilfred, the payroll reports submitted to court indicate that the regular hourly wage rates paid and supplemental rates

---

643 F.3d 352, 361 (2d Cir. 2011); *Doo Nam Yang v. ACBL Corp.*, 427 F. Supp 2d 327, 331-32 (S.D.N.Y. 2005) (explaining that "New York law incorporates a similar standard."). When an "employer has kept proper and accurate records, the employee may easily discharge his burden by securing the production of those records." *Kuebel*, 643 F.3d at 362 (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946)). In contrast, "if an employer's records are inaccurate or inadequate, an employee need only present sufficient evidence to show the amount and extent of [the uncompensated work] as a matter of just and reasonable inference." *Id.* (quotation omitted). This is a low burden that is possible for plaintiff to meet "through estimates based on his own recollection." *Id.* Under either standard, the plaintiffs have discharged their initial burden through allegations in the complaint, their declarations specifying the approximate number of hours they worked and wages they received, certain Alexandria payroll and other accounting records obtained in discovery, and an expert report which details, on a weekly basis, the alleged number of hours worked and wages paid for the alleged duration of each plaintiff's employment.

provided to them exceeded the prevailing rates issued by the New York City Office of the Comptroller. Plaintiffs Dare and Jenkins have submitted paystubs or checks from Alexandria that reflect lesser amounts than their net payments listed on Alexandria payroll records for the corresponding periods. Pls.' Reply Ardito Decl. Ex. 2. Nevertheless, construing the facts in the light most favorable to defendants, with respect to plaintiffs Dare, Jenkins, Titus, Castillo and Wilfred, the plaintiffs' motion for summary judgment on their claim for underpayment of prevailing wages and supplemental benefits is denied. Alexandria payroll reports indicate, however, that for certain weeks, plaintiffs Hapanowicz, Shyika, and Zhdan were paid less than prevailing wages, prevailing supplements, or both.

### 1. Hapanowicz

Alexandria's payroll reports indicate that Hapanowicz worked as a plasterer, tile setter, tile finisher, and mason setter. During his time working for Alexandria, the prevailing wage rates for a plasterer changed. From the time of the earliest payroll report in the record listing Hapanowicz, for the week ending April 22, 2005, until August 2, 2005, the prevailing wage rate for a plasterer was $33.24 per hour. *Labor Law § 220 Prevailing Wage Schedule ("Prevailing Wage Schedule") 2004-05*, at 54, http://comptroller.nyc.gov/wp-content/uploads/documents/220-schedule2004-2005.pdf; *Prevailing Wage Schedule 2005-06*, at 52, http://comptroller.nyc.gov/wp-content/uploads/documents/220-schedule2005-2006.pdf.

Effective August 3, 2005, the rate rose to $34.03 per hour, *Prevailing Wage Schedule 2005-06*, at 52, and remained in effect until June 30, 2009. *Prevailing Wage Schedule 2006-07*, at 46, http://comptroller.nyc.gov/wp-content/uploads/documents/220-schedule2006-2007.pdf; *Prevailing Wage Schedule 2007-08*, at 47, http://comptroller.nyc.gov/wp-content/uploads/documents/220-schedule2007-2008.pdf; *Prevailing Wage Schedule 2008-09*, at 45, http://comptroller.nyc.gov/wp-content/uploads/documents/220-schedule2008-2009.pdf.

Then, effective July 1, 2009, the prevailing rate rose again to $38.78 per hour, *Prevailing Wage Schedule 2009-10*, at 66, http://comptroller.nyc.gov/wp-content/uploads/documents/220-schedule2009-2010.pdf, and remained in effect beyond the time of the most recent payroll reports in the record relating to Hapanowicz. *Prevailing Wage Schedule 2010-11*, at 74, http://comptroller.nyc.gov/wp-content/uploads/documents/220-schedule2010-2011.pdf.

Forty nine payroll reports, from the week ending August 5, 2005 until September 24, 2010, show that Alexandria paid Hapanowicz less than the prevailing wage rate for his work as a plasterer. Pls.' Vol. II Ex. 2P; Pls.' Reply Ardito Decl. Exs. 2–3; 96th St. Reports; 135th St. Reports, ECF No. 132-9; Columbus Circle Reports, ECF. No. 132-10. For example, the records show that he was paid $33.52 per hour for work as on the Brooklyn Battery Tunnel, and Myrtle-Wyckoff and Columbus Circle stations between the weeks ending August 5, 2005 and September 21, 2007, when the prevailing wage rate was $34.03 per hour. *Prevailing Wage Schedule 2005-06*, at 52; *Prevailing Wage Schedule 2006-07*, at 46; *Prevailing Wage Schedule 2007-08*, at 47; *Prevailing Wage Schedule 2008-09*, at 45. The records show that Hapanowicz was paid either $33.00 or $37.68 for the same work on the 96th street station between the weeks ending November 15, 2009 and September 24, 2010, when the prevailing wage rate $38.78 per hour. Pls.' Vol. II Ex. 2P; Pls.' Reply Ardito Decl. Exs. 2–3; 96th St. Reports; 135th St. Station Reports; Columbus Circle Reports.

Moreover, the reports indicate that there were occasions when Hapanowicz was paid less than the prevailing wage rate for work as a tile setter. For example, the payroll records for the weeks ending June 3, 2007 and June 17, 2007, when the prevailing rate for a tile setter was $40.92 per hour, *Prevailing Wage Schedule 2006-07*, at 57, show that Hapanowicz was paid $38.81 and $38.61 per hour, respectively, for that job at the Columbus Circle station, Pls.' Reply

Ardito Decl. Ex. 2; Columbus Circle Reports.[6]  In addition, a report for the week ending December 7, 2007, when the prevailing wage rate was $41.64 per hour, *Prevailing Wage Schedule 2007-08*, at 58, indicates that Hapanowicz was paid $35.00 per hour, Pls.' Reply Ardito Decl. Ex. 1.  Because Alexandria's payroll reports, which the defendants insist are accurate and show that that the plaintiffs were paid appropriate wages, show various instances when this was not the case for Hapanowicz, his motion for summary judgment with respect to his claim for prevailing wages is granted.

Nevertheless, with respect to Hapanowicz's claim for prevailing supplemental benefits, his summary judgment motion must be denied.  The payroll reports show instances when Alexandria paid Hapanowicz supplemental benefits at lower than the prevailing rate. Supplemental benefits, however, may be provided as a combination of benefits and cash, *Chesterfield Assocs.*, 830 N.E.2d at 288-89, and Alexandria has submitted $35,500 worth of cash receipts, which it claims to have paid to Hapanowicz as additional benefits that were not included in the plaintiffs' expert report.  Galina Decl. ¶ 23; Elyased Decl. ¶ 16; Alexandria Opp'n Ex. A.  While Hapanowicz claims that he never received this cash, and never signed the receipts, Pls.' Reply Hapanowicz Decl. ¶¶ 2-11, they create a genuine issue of material fact regarding whether Hapanowicz received prevailing supplemental benefits.  Accordingly, his motion for summary judgment with respect to those benefits is denied.

### 2. Shyika

The payroll records show that for thirteen different weeks between the weeks ending May 6, 2005 and December 9, 2005, Alexandria paid Shyika less than either prevailing wages,

---

[6] The payroll reports show that Hapanowicz was paid $34.95 per hour for work as a mason setter at the 135th street station for the weeks ending October 5, 12, 19, and 26 in 2007, Columbus Circle Payroll Reports, when the prevailing wage rate for a "Stone Mason – Setter" was $43.45 per hour, *Prevailing Wage Schedule 2007-08*, at 55.  It is unclear whether those two jobs are the same.

supplements, or both.[7]  For work as a plasterer on the Brooklyn Battery Tunnel between those dates, the reports show nine weeks when Shyika was paid $18.05 or $18.06 per hour in supplemental benefits.  Pls.' Vol. II Ex. 2P; Pls.' Reply Ardito Decl. Ex. 2.  Because the prevailing supplemental benefits rate for those dates for work in Brooklyn and Manhattan, $18.30 per hour and $21.69 per hour, respectively, were both higher than the rate paid to Shyika, I need not decide at this juncture which rate applied to work on the Battery Tunnel.  *Prevailing Wage Schedule 2004-05*, at 54; *Prevailing Wage Schedule 2005-06*, at 52.  Moreover, the payroll reports show that for the weeks ending August 5, 2005, August 12, 2005, August 19, 2005, and September 16, 2005, Alexandria paid Shyika either $16.00 or $18.06 per hour in supplemental benefits for work as a tile finisher on the Brooklyn Battery Tunnel.  Pls.' Reply Ardito Decl. Ex. 2.  Again, Shyika was paid less than the prevailing supplemental benefit rate, which was $19.72 for work as a tile finisher.  *Prevailing Wage Schedule 2005-06*, at 66.  Defendant Elyased claims that Shyika, like Hapanowicz, was paid additional benefits in cash, but Elyased has not submitted evidence to support that contention and claims that he "cannot locate the cash receipts."  Elyased Decl. ¶ 47.  Elyased's bare assertions are insufficient to create a genuine issue of material fact precluding summary judgment.  *See Anderson*, 477 U.S. at 242; *Del. & Hudson Ry. Co.*, 902 F.2d at 178 ("[c]onclusory allegations will not suffice to create a genuine issue").  The defendants have offered no evidence of the precise cash supplements paid to Shyika or "evidence to negative the reasonableness of the inference to be drawn" from the payroll reports showing underpayment of prevailing supplemental benefits.  *See Doo Nam Yang*, 427 F. Supp 2d at 332.

---

[7] Shyika has submitted checks, from Alexandria and signed by Elyased, for fourteen weeks between May 6, 2005 and December 9, 2005, which are for lower total amounts than is shown on Alexandria's payroll reports as Shyika's net pay for the corresponding periods. Pls.' Reply Ardito Decl. Ex. 2. Moreover, handwritten notes below the copies of those checks suggest that Shyika might have worked a greater number of hours than is listed on the payroll reports, and sometimes in excess of 40 hours per week. Pls.' Reply Ardito Decl. Ex. 2. It is inappropriate, however, to rely on those discrepancies when deciding the plaintiffs' motion for summary judgment.

The payroll reports also show instances when Shyika was paid less than the hourly prevailing wage. Effective August 3, 2005, the prevailing wage rate per hour for a plasterer was $34.03. *Prevailing Wage Schedule 2005-06*, at 52. For the weeks ending November 4, 2005 and December 9, 2005, however, the payroll reports show that Alexandria paid Shyika $33.52 per hour, as it had before the change in the wage schedules. Pls.' Reply Ardito Decl. Ex. 2. Accordingly, plaintiff Shyika's motion for summary judgment with respect to his claim for prevailing wages and supplemental benefits is granted.

### 3. Zhdan

Zhdan also worked as a plasterer on the Brooklyn Battery Tunnel. Unlike Hapanowicz and Shyika, Alexandria's payroll reports show that Zhdan was paid more than the required prevailing wage rate, including after August 3, 2005, when it was raised to $34.03 per hour.[8] *Prevailing Wage Schedule 2005-06*, at 52. For six weeks between May 20, 2005 and July 28, 2005, however, the payroll reports show that Alexandria paid Zhdan $18.05 or $18.06 per hour in supplemental benefits—less than the prevailing supplemental benefits rates—for that work. Pls.' Vol. II Ex. 2D; Pls.' Reply Ardito Decl. Ex. 2. As noted above, the prevailing supplemental benefits rates at that time in Brooklyn and Manhattan for a plasterer were $18.30 per hour and $21.69 per hour, respectively. *Prevailing Wage Schedule 2004-05*, at 54; *Prevailing Wage Schedule 2005-06*, at 52. Defendant Elyased claims that although he "cannot locate the cash receipts . . . evidencing the payments," he paid addition benefits to Zhdan in cash. Elyased Decl. ¶ 51. For the reasons explained above with respect to plaintiff Shyika, this conclusory allegations is insufficient to defeat summary judgment. Consequently, Zhdan's summary

---

[8] Zhdan submitted checks from Alexandria and signed by Elyased. The checks purport to cover six weeks between May 20, 2005 and August 12, 2005, and are for lower total amounts than is shown on Alexandria's payroll reports as Zhdan's net pay for the corresponding periods. Pls.' Reply Ardito Decl. Ex. 2. Nevertheless, these checks provide Zhdan's claim with little support on the plaintiffs' summary judgment motion when the facts are construed in the light most favorable to the nonmoving party.

judgment motion with respect to his claim for prevailing wages is denied, but is granted with respect to his claim for prevailing supplemental benefits.

## II. Unpaid Overtime Wages under the FLSA and NYLL

Both the FLSA and NYLL entitle an employee to "a rate [of pay] not less than one and one-half times the regular rate at which he is employed" for all hours worked in excess of forty hours per week. 29 U.S.C. § 207(a)(1); *see also* N.Y. Comp. Codes. R. & Regs. tit. 12 § 142-2.2; *Brown v. Tomcat Elec. Sec., Inc.*, No. 03-CV-5175 (FB) (JO), 2007 WL 2461823, at *2 (E.D.N.Y. Aug. 27, 2007). Moreover, on a public works project, "all work in excess of eight hours per day and five days per week shall be considered overtime work."[9] N.Y. Lab. Law § 220(2). "[T]he regular rate refers to the hourly rate actually paid [to] the employee for the normal, non-overtime workweek for which he is employed." *Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419, 424 (1945). Where an employee is entitled to prevailing wages under New York law and does not receive such wages, however, overtime wages should be calculated using the prevailing wage as the regular rate. *See Sobczak v. AWL Inudstries, Inc.*, 540 F. Supp. 2d 354, 360-61 (E.D.N.Y. 2007).[10] While the statute of limitations under the FLSA for an unpaid overtime claim is ordinarily two years, and three years if the "cause of action aris[es] out of a willful violation," 29 U.S.C. § 255(a), under the NYLL the statute of limitations is six years, N.Y. Lab Law § 663(3). Because overtime coverage under the NYLL encompasses

[9] The Prevailing Wage Schedules issued by the Comptroller "may contain more stringent requirements that reflect the collective bargaining agreement in the locality for a given type of work." New York State: Career/Employment, Workplace Issues, http://www.nysegov.com/citguide.cfm?ques_id=1005&superCat=36&cat=344&content=relatedfaqs (March 31, 2014).

[10] For the first time in their memorandum in support of their summary judgment motion, the plaintiffs argue that the general contractors, defendants Judlau and Tully, are liable for unpaid overtime pay. Pls.' Mem, at 20-23. I do not address whether those general contractors could be liable because the plaintiffs' complaint specifically states that the second and fourth claims for relief, which address unpaid overtime under the NYLL and FLSA, were brought against only "the Alexandria Defendants," Second Amended Compl. ¶¶ 19-21, 126-29, defined earlier in the complaint as defendants Elsayed, Mohammed, and Alexandria, Second Amended Compl. ¶ 1. By contrast, the only cause of action in the complaint against any party other than "the Alexandria Defendants" is the fifth claim for prevailing wages and supplements. Second Amended Compl. ¶¶ 130-40. Accordingly, to the extent the plaintiffs are entitled to damages based on unpaid overtime, defendants Judlau and Tully are not liable for those damages.

all hours covered under the FLSA, as well as additional hours, the statute of limitations does not inhibit any of the plaintiffs' overtime claims.[11]

As explained above, irrespective of the accuracy of Alexandria's payroll reports, the plaintiffs have met their initial burden to demonstrate that they performed work for which they were not properly compensated. *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 361 (2d Cir. 2011). Accordingly, it is the defendants' burden to offer evidence of the precise wages paid to plaintiffs or to negative the inference of underpayment that can be drawn from the plaintiffs' evidence. *Doo Nam Yang*, 427 F. Supp 2d at 332. Like with respect to the prevailing wage claims, I view the defendants' evidence in the light most favorable to them.

Defendants rely on Alexandria's payroll reports, and a declaration submitted by Alexandria's principal, Aly Elyased, who denies some of the plaintiffs' allegations regarding where and for how long they worked. To the extent the payroll reports show that the plaintiffs did not work overtime or were paid legally sufficient premiums for overtime work, there exist genuine factual disputes that preclude summary judgment. That is the case with respect to plaintiffs Shyika[12], Zhdan, and Castillo. Nevertheless, the payroll reports, on which defendants rely, show that five of the plaintiffs—Hapanowicz, Jenkins, Dare, Titus, and Wilfred—worked overtime hours, but were not paid at overtime rates. Instead, the reports indicate that the plaintiffs' total wages were calculated using the regular rates of pay for all hours worked, including overtime hours.

---

[11] While the statute of limitations distinction used to be significant at the damages stage with respect to liquidated damages because the FLSA provided for a greater damages rewards than the NYLL, *see, e.g.*, *Dong v. Ng*, No. 08 Civ. 917 (JGK)(MHD), 2011 WL 2150544). at *3 (S.D.N.Y. Mar. 8, 2011), both statutes now provide for liquidated damages awards of up to 100 percent of unpaid wages, 29 U.S.C §§ 216(c), 260; N.Y. Lab. Law §§ 198(3), 663(1).

[12] As noted earlier, Shyika submitted checks containing handwritten notes that suggest that Shyika might have worked a greater number of hours than is listed on the payroll reports, and sometimes in excess of 40 hours per week. Pls.' Reply Ardito Decl. Ex. 2. It is inappropriate, however, to rely on those discrepancies when deciding the plaintiffs' motion for summary judgment.

*1. Hapanowicz*

The payroll reports indicate that, on various occasions, Hapanowicz worked in excess of 40 hours per week, five days per week, or eight hours per day. The payroll reports contain spaces to record the hours Alexandria employees worked during the week from Monday to Sunday. Nevertheless, the record reflects eight occasions between 2007 and 2009 when Alexandria created payroll reports for the weekends separate from the payroll reports for the weekdays that were a part of the same seven day week. While many of these reports, when considered in isolation, do not indicate that Hapanowicz worked overtime, together the weekend and weekday reports indicate that Hapanowicz worked overtime hours for which he was underpaid. For example, the records show that Hapanowicz worked seven hours at the Columbus Circle station on Monday April 16, 2007, Columbus Circle Reports, and 28 hours on Tuesday through Friday at the 135th street station during that week, which the relevant report shows as ending Friday April 20, 2007. 135th St. Reports; Columbus Circle Reports. A separate report for the same week but ending Sunday April 22, however, shows that Hapanowicz also worked ten hours at Columbus Circle on that Saturday.[13] Columbus Circle Reports. Accordingly, the records suggest that Hapanowicz worked a total of six days and 45 hours for the seven day period. A similar problem exists, where there is a payroll report covering Monday through Friday and a separate report covering Saturday and Sunday the same week, four other times in 2007—July 6 and July 8; July 13 and July 15; August 17 and August 19; August 31 and September 2—and three times in 2009—February 13 and February 15; February 20 and

---

[13] Some Alexandria payroll reports list both regular and overtime hours in a single day, but the total hours worked are calculated using only the overtime hours listed. *See, e.g.*, Columbus Circle Reports. For this motion, I assume that the total hours in a day in these instances is the overtime number indicated. In addition to construing the records in the light most favorable for Defendants, some of the records would not make sense otherwise because they would list more than 24 hours on certain days. *See, e.g.*, Columbus Circle Reports.

February 22; and March 20 and March 22. Pls.' Vol II. Ex. 2J, ECF No. 101-12; 96th St. Reports; Columbus Circle Reports; Sanitation Garage Reports, ECF No. 132-11.

Even where Alexandria did not create separate payroll reports for the week and the weekend, the records suggest that Hapanowicz was underpaid for the overtime hours he worked. The payroll reports show five additional instances in 2007—the weeks ending July 20, November 2, November 9, November 16, and December 22—and three times in 2009—the weeks ending March 6, October 4, and November 15—when Hapanowicz worked more than 40 hours in a week.[14] During the weeks ending July 20, 2007 and March 6, 2009, he also worked more than eight hours on certain days. Columbus Circle Reports; Sanitation Garage Reports. Moreover, the records show that Hapanowicz worked more than five days, and more than eight hours on certain days during the weeks ending December 22, 2007, October 4, 2009, and November 15, 2009. Pls.' Reply Ardito Decl. Ex. 2; 135th St. Reports. Finally, the payroll reports reflect five other weeks in 2007, four in 2008, and two in 2010, during which Hapanowicz worked more than eight hours on certain days. Pls.' Reply Ardito Decl. Ex. 2; 96th St. Reports; Columbus Circle Reports.

### 2. Dare

Dare's payroll reports indicate that during the three weeks in 2009 ending April 19, April 26, and May 17, he worked five days or fewer and under 40 hours, but ten hours on Saturday each week. Pls.' Vol II. Ex. 2K; Fetsus Adewale Charleston Annex Reports, ECF No. 132-5. They also show two weeks that year, ending May 10 and May 24, in which Dare worked six days and 45 and 51 hours, respectively. Pls.' Reply Ardito Decl. Ex. 2; Fetsus Adewale Charleston

---

[14] The records show that Hapanowicz was working at both the 135th street station and the Manhattan Sanitation Garages for the weeks ending November 2, 2007, November 9, 2007, and November 16, 2007, and the 96th street station and the Manhattan Sanitation Garages for the week ending March 6, 2009. Pls.' Reply Ardito Decl. Exs. 2, 4; 96th St Reports. The fact that Hapanowicz worked on multiple projects at the same time does not alter the analysis because all of the work was performed for Alexandria. *See Walling v. Twyeffort, Inc.*, 158 F.2d 944, 947 (2d Cir. 1947) ("Only if an employee works more than 40 hours a week *for a particular employer* is the latter required to pay overtime.") (emphasis added).

Annex Reports. According to the reports, Dare worked ten hours on Saturday both of those two weeks, and 13 hours on Wednesday during the week ending May 24, 2009. Pls.' Reply Ardito Decl. Ex. 2; Fetsus Adewale Charleston Annex Reports.

### 3. Jenkins

The payroll reports show that during the three weeks in 2009 ending May 10, May 31, and June 21, Jenkins worked five days or fewer and under 40 hours, but ten hours on Saturday each week. Pls.' Reply Ex. 3.2, Ardito Decl. Ex. 2; Jenkins Charleston Annex Reports. They also indicate that for three weeks that year, ending May 17, May 24, and June 28, Jenkins worked 45, 51, and 45 hours, respectively. Moreover, the reports show that he worked six days all of those weeks, ten hours each Saturday, and 13 hours on Wednesday during the week ending May 24. Pls.' Reply Ex. 3.2, Ardito Decl. Ex. 2; Jenkins Charleston Annex Reports.

### 4. Titus

Titus's payroll reports show that during the three weeks in 2009 ending September 13, October 4, and October 11, he worked nine hours per day on multiple occasions, but was paid the same wage for all hours. Titus Charleston Annex Reports, ECF No.132-13.

### 5. Wilfred

Finally, the payroll reports show that for each of the three weeks in 2009 ending August 16, August 23, and August 30, Wilfred worked more than 40 hours. Pls.' Vol II Ex. 2O. Moreover, they indicate that he worked six days per week, and nine hours each Saturday. Pls.' Vol II Ex. 2O.

Although their work in excess of 40 hours per week, five days per week, and eight hours per day entitled plaintiffs Hapanowicz, Jenkins, Dare, Titus, and Wilfred to overtime wages for those hours, the reports indicate that their total pay was calculated based on their regular wage rates for all hours worked. Accordingly, the plaintiffs' motion for unpaid overtime is granted

with respect to Hapanowicz, Jenkins, Dare, Titus, and Wilfred, and denied with respect to Shyika, Zhdan, and Castillo.

### III. New York Common Law Claims

While the plaintiffs' notice of motion seeks summary judgment "as to liability of all Defendants for claims for unpaid prevailing wages and benefits and unpaid overtime pursuant to . . . the common law of New York," Not. of Mot. at 2, none of the plaintiffs' papers in support of the motion speak to their breach of contract or quantum meruit claims—the only common law actions in the complaint. The only contracts, some of which are submitted as exhibits, described in plaintiffs' papers are public works contracts between the general contractors and New York City, and subcontracting agreements between Alexandria and the general contractors. Moreover, the plaintiffs do not suggest that there is a right to prevailing or overtime wages under New York common law, and they make no allegations regarding a contract in which Alexandria agreed to provide such wages. Accordingly, to the extent the plaintiffs move for summary judgment with respect to their breach of contract and quantum meruit cause of action, the motion is denied.

### CONCLUSION

The plaintiffs' motion for summary judgment on their claims for prevailing wages and supplements under the NYLL is GRANTED with respect to plaintiffs Hapanowicz, Shyika, and Zhdan, and DENIED with respect to plaintiffs Dare, Jenkins, Titus, Castillo, and Wilfred. On their claims for unpaid overtime wages, the plaintiffs' motion for summary judgment is GRANTED with respect to plaintiffs Hapanowicz, Dare, Jenkins, Titus, and Wilfred, and DENIED with respect to plaintiffs Shyika, Zhdan, and Castillo. The plaintiffs' motion for summary judgment on their quantum meruit and breach of contract claims is DENIED.

**SO ORDERED.**

Brooklyn, New York
March 31, 2014                           /s/_____
                                         Edward R. Korman
                                         Senior United States District Judge